UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Aegerion Pharmaceuticals, Inc., <u>et al.</u>,[1] | : | Case No. 19-11632 (MG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND
## <u>ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN</u>

This Court having considered:  (i) the *Debtors' First Amended Joint Chapter 11 Plan* [Docket No. 180] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, and including the Plan Supplement and any amendments, modifications and/or supplements thereto, together, the "**Plan**"),[2] a copy of which is attached hereto as <u>Exhibit A</u>; (ii) the *Disclosure Statement for Debtors' First Amended Joint Chapter 11 Plan* [Docket No. 182] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, the "**Disclosure Statement**"); (iii) the *Order: (I) Approving Disclosure Statement; (II) Establishing Date of Confirmation Hearing; (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of Notice of Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations;*

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are Aegerion Pharmaceuticals, Inc. (0116), and Aegerion Pharmaceuticals Holdings, Inc. (1331).  The Debtors' executive headquarters are located at 245 First Street, Riverview II, 18th Floor, Cambridge, MA 02142.

[2]     Capitalized terms used but not defined herein have the meanings given them in the Plan.

*(IV) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan;*

*(V) Approving Rights Offering Procedures; and (VI) Granting Related Relief* [Docket No. 191]

(the "**Disclosure Statement Order**"), which was entered on July 11, 2019; (iv) the declarations,

certifications and related supplements filed by (a) Prime Clerk LLC, dated August 22, 2019

[Docket No. 260] (the "**Voting Declaration**"), (b) John R. Castellano, Chief Restructuring

Officer of the Debtors and Managing Director of AP Services, LLP, dated August 29, 2019

[Docket No. 274] (the "**Castellano Declaration**"), (c) Ashish Contractor, Managing Director of

Moelis & Company LLC, dated August 29, 2019 [Docket No. 275], and (d) Ben Harshbarger,

Interim Chief Executive Officer and General Counsel of Novelion Therapeutics Inc., dated

August 29, 2019 [Docket No. 276]; (v) the affidavits, declarations, witness testimony and

exhibits, as applicable, admitted into evidence at the hearing conducted on September 5, 2019 to

consider confirmation of the Plan (the "**Confirmation Hearing**"); (vi) the arguments of counsel

presented at the Confirmation Hearing; (vii) the objections, joinders and/or reservations of rights

filed by (a) Sandoz GmbH [Docket No. 245], (b) Marc Beer [Docket No. 247], (c) Mark

Sumeray and Mark Fitzpatrick [Docket No. 248], (d) Craig Fraser [Docket No. 249], (e) the

United States Securities and Exchange Commission [Docket No. 251], (f) Catalent Pharma

Solutions, LLC [Docket No. 252], (g) the Trustees of the University of Pennsylvania [Docket

No. 254], (h) the Civil Medicaid Fraud Division of the Office of the Attorney General of Texas

[Docket No. 255], and (i) the United States Trustee for Region 2 [Docket No. 263] (collectively,

the "**Objections**"), and other informal comments reported by the Debtors; and (viii) the Debtors'

memorandum of law filed in support of confirmation of the Plan and in reply to the Objections,

dated August 29, 2019 [Docket No. 277]; and this Court having taken judicial notice of all

pleadings and other documents filed in these cases, all orders entered and written and oral

evidence submitted by the Debtors during the pendency of these cases (the "**Chapter 11**

**Cases**"); and the Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan; and upon the appearance of interested parties having been duly noted in the record of the Confirmation Hearing; and the Court having overruled any and all unresolved objections to confirmation of the Plan and all reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and upon the record of the Confirmation Hearing and the Chapter 11 Cases; and after due deliberation thereon, and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND THAT:[3]

## JURISDICTION AND VENUE

A.    This Court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Confirmation of the Plan, approval of the compromises and settlements incorporated into the Plan, and validation of the associated transactions and documents are each core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has exclusive jurisdiction to determine whether the Plan should be confirmed under the applicable provisions of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and this Court has the constitutional power and authority to enter a final order with respect thereto.  The Debtors are

---

[3]    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

eligible debtors under section 109 of the Bankruptcy Code and are proper plan proponents under

section 1121(a) of the Bankruptcy Code.

## **VOTING ON PLAN**

C.      As evidenced by the Voting Declaration, votes to accept or reject the Plan

have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the

Southern District of New York (collectively, the "**Bankruptcy Rules**"), the Disclosure

Statement Order, and all applicable non-bankruptcy laws, rules or regulations.

D.      On August 22, 2019, the Debtors filed the Voting Declaration, which

certifies in accordance with the voting tabulation procedures approved by the Disclosure

Statement Order that:  (a)(i) 100% in amount and 100% in number of eligible holders of Claims

in Class 3 that cast ballots voted to accept the Plan; (ii) 100% in amount and 100% in number of

eligible holders of Claims in Class 4 that cast ballots voted to accept the Plan; and (iii) 98.77% in

amount and 88.89% in number of eligible holders of Claims in Class 6B on an aggregate basis

that cast ballots voted to accept the Plan; and (b) Classes 3, 4 and 6B have accepted the Plan

when calculated by Class and by individual Debtor.[4]  All procedures used to tabulate the Ballots

were fair, reasonable and complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Disclosure Statement Order, and all other applicable rules, laws and

regulations.

E.      The Debtors have solicited acceptances of the Plan in good faith and in

compliance with the Disclosure Statement Order and applicable provisions of the Bankruptcy

---

[4]      With respect to Debtor Aegerion Pharmaceuticals Holdings, Inc., no Class 6B Other General Unsecured
Claims were filed or scheduled in its case and therefore such Class, pursuant to Section 6.4 of the Plan,
shall be shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for
purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the
Bankruptcy Code.

Code and Bankruptcy Rules. The Debtors participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered under the Plan, and therefore are entitled to the protections of section 1125(e) of the Bankruptcy Code. Based on the foregoing, neither the Debtors nor the Reorganized Debtors shall be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered under and in accordance with the Plan.

F.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.

## PLAN SUPPLEMENT

G.    Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement were appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Order in a manner consistent with the Plan (and the rights of the Required Parties and the Committee thereunder) and this Order.

## THE PLAN COMPLIES WITH THE STANDARDS FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE

H.    Section 1129(a)(1). The Plan complies with each applicable provision of the Bankruptcy Code. In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code. Among other things:

> i.    In accordance with section 1122(a) of the Bankruptcy Code, Article IV of the Plan classifies each Claim against and Interest in the Debtors into a Class containing only substantially similar Claims or Interests;

ii.     In accordance with section 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan properly classifies all Claims and Interests that require classification;

iii.    In accordance with section 1123(a)(2) of the Bankruptcy Code, Article IV of the Plan properly specifies each Class of Claims or Interests that is not impaired under the Plan;

iv.     In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan properly specifies the treatment of each Class of Claims or Interests that is impaired under the Plan;

v.      In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi.     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, the provisions regarding Effective Date transactions and transfers, the restructuring transactions and management of the Reorganized Debtors, the Rights Offering, and the funding of the Plan;

vii.    In accordance with section 1123(a)(6) of the Bankruptcy Code, the Amended Certificates of Formation of the Reorganized Debtors and the new articles of association of the Plan Investor contain a provision prohibiting the issuance of non-voting equity securities;

viii.   In accordance with section 1123(a)(7) of the Bankruptcy Code, the manner of selection of officers and directors of the Reorganized Debtors is consistent with the interests of creditors and equity security holders and with public policy;

ix.     In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

x.      In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court;

xi.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the settlements and compromises under the Plan including, among other things, causes of action subject to the releases and

exculpations provided in Article XII of the Plan, are fair, reasonable and in the best interests of the Debtors' estates;

xii.   In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 12.9 of the Plan provides that, subject to Sections 12.6, 12.7 and 12.8 of the Plan and except as set forth therein or herein, the Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Articles IV or V of the Plan, may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases has not been commenced;

xiii.   In accordance with section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class;

xiv.   In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

xv.   In accordance with section 1123(d) of the Bankruptcy Code, Article X of the Plan provides for the satisfaction of Cure Amounts associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Cure Amounts will be determined in accordance with the underlying agreements and applicable law.

I.   Section 1129(a)(2). The Debtors have complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and any other orders of this Court with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

i.   All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto;

 ii.  In transmitting the Plan, the Disclosure Statement, the Disclosure Statement Order, the Ballots, and related documents and notices in soliciting and tabulating the votes on the Plan, the Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, applicable non-bankruptcy law and the Disclosure Statement Order;

 iii.  Written notice of the Confirmation Hearing and the relevant deadlines for the submission of Ballots and objections to confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Disclosure Statement Order.  Such written notice is adequate and sufficient notice of the Plan, the contents of the Plan, the Confirmation Hearing, and the opportunity to object to any aspect of the Plan;

 iv.  The modifications to the Plan contained in the revised Plan filed with the Court on August 29, 2019 [Docket No. 279], do not adversely change the treatment of any Class in a material manner.  Therefore, the Plan does not require additional disclosure under sections 1125 or 1127(a) of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor does it require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections.  The Classes that accepted the Plan are deemed to have accepted the Plan and additional notice under Bankruptcy Rule 3019(a) is not required.

 v.  Claims in Classes 1, 2, 5 and 6A under the Plan are unimpaired, and such Classes deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code;

 vi.  All Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order (i.e., Classes 3, 4 and 6B) were given the opportunity to vote on the Plan;

 vii.  The Debtors have made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 3, 4 and 6B under the Plan; and

 viii.  Each of Classes 3, 4 and 6B have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims actually voting.

J.      Section 1129(a)(3).  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in these Chapter 11 Cases.  The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and certain of their principal constituencies (including the members of the Ad Hoc Group, Novelion and the Plan Investor, all of whom are signatories to the RSA), reflects substantial input from the principal constituencies having an interest in these cases, and achieves the goal of reorganization embodied by the Bankruptcy Code.

K.      The Plan is based upon, among other things, the Plan Funding Agreement and the RSA, each of which were attached as exhibits to the Disclosure Statement.  The Debtors filed and have prosecuted the Chapter 11 Cases with an honest belief that they were in need of restructuring and that the restructuring contemplated in the RSA, the Plan Funding Agreement and the Plan is the best restructuring alternative available to them and all of their stakeholders. The Debtors' good faith is evident from the record of the Chapter 11 Cases, including the Disclosure Statement, the Plan, and the record of the Confirmation Hearing.  The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code. The Debtors and each of their respective officers, directors, employees, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated thereby, including the Plan Supplement documents, and (b) take any actions authorized, directed or contemplated by this Order or the Plan.  Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

L.      Section 1129(a)(4).  Except as provided in the Plan, the Plan Funding

Agreement, the DIP Order and paragraph 37 hereof, no payment for services or costs and

expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and

incident to these Chapter 11 Cases, has been or will be made by the Debtors, other than

payments that have been (or subsequently are) authorized by order of the Court.  Pursuant to

Section 3.3 of the Plan, and except as otherwise provided herein, in the Plan, the RSA or in the

DIP Order, all payments to be made to Professional Persons or other entities asserting a Fee

Claim for services rendered before the Effective Date will be subject to review and approval by

this Court.

M.      Section 1129(a)(5).  To the extent known, the Debtors have disclosed the

identities and affiliations of the individuals proposed to serve, after confirmation of the Plan, as

directors and officers of each of the Plan Investor and the Reorganized Debtors, and the identity

and the nature of compensation of insiders that will be employed or retained by any of the

Reorganized Debtors.  The appointments to, or continuance in, such offices by the individuals

proposed to serve, after confirmation of the Plan, as directors and officers is consistent with the

interests of holders of Claims and Interests and with public policy.

N.      Section 1129(a)(7).  Each holder of an impaired Claim or Interest in each

impaired Class of Claims or Interests that has not accepted the Plan will, on account of such

Claim or Interest, receive or retain property under the Plan having a value, as of the Effective

Date, that is not less than the amount that such holder would have received or retained if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  See

Disclosure Statement, Exhibit 2.

O.      Section 1129(a)(8).  The Plan has not been accepted by all impaired

Classes of Claims and Interests because, pursuant to section 1126(g) of the Bankruptcy Code, the

holders of Claims in Class 7 and holders of Interests in Class 8 are conclusively deemed to have

rejected the Plan.  Nevertheless, the Plan is confirmable because it satisfies section 1129(b) of

the Bankruptcy Code with respect to such non-accepting Classes of Claims and Interests

pursuant to the terms of section 1129(b)(1) of the Bankruptcy Code.

P.      Section 1129(a)(9).  Except to the extent that the holder of a particular

Claim has agreed to different treatment, the Plan provides treatment for DIP Claims,

Administrative Expense Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims

that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

Q.      Section 1129(a)(10).  As evidenced by the Voting Declaration, at least one

Class of Claims that is impaired under the Plan has accepted the Plan, determined without

including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of

the Bankruptcy Code).

R.      Section 1129(a)(11).  The information in the Disclosure Statement and the

Castellano Declaration, together with the record of the Chapter 11 Cases and evidence presented

at the Confirmation Hearing, establishes that the Plan is feasible and that confirmation of the

Plan is not likely to be followed by the liquidation or the need for the further financial

reorganization of the Debtors or the Reorganized Debtors.

S.      Section 1129(a)(12).  All fees payable pursuant to section 1930 of title 28

of the United States Code have been or will be paid on or before the Effective Date by the

Debtors, and all such fees due thereafter shall be paid by the Reorganized Debtors in the ordinary

course until the entry of a final decree closing the Chapter 11 Cases or the conversion or

dismissal of the Chapter 11 Cases.

T.      Section 1129(a)(13).  Pursuant to Section 14.2 of the Plan, on and after the

Effective Date, in accordance with section 1129(a)(13) of the Bankruptcy Code, the Reorganized

Debtors shall continue to pay all retiree benefits (within the meaning of section 1114 of the

Bankruptcy Code), if any, at the level established in accordance with section 1114 of the

Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for

which each Debtor had obligated itself to provide such benefits.

U.    Sections 1129(a)(6), 1129(a)(14), 1129(a)(15) and 1129 (a)(16).  Sections

1129(a)(6), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to

the Chapter 11 Cases.

V.    Section 1129(b).  The Plan does not "discriminate unfairly" and is "fair

and equitable" with respect to Classes 7 and 8, which Classes are impaired and deemed to reject

the Plan.  The Plan does not discriminate unfairly with respect to such Classes because no

similarly situated holders of Claims or Interests are receiving a recovery under the Plan.  The

Plan is "fair and equitable" with respect to such Classes because (i) no holders of Claims or

Interests junior to the Claims and Interests in such Classes will receive or retain property under

the Plan on account of such Claims or Interests, and (ii) no holders of Claims in a senior Class

will receive a recovery in excess of 100% of the amount of its Claim(s).  Thus, the Plan may be

confirmed notwithstanding the rejection by Classes 7 and 8.

W.    Section 1129(c).  The Plan is the only plan that has been filed in these

cases that has been found to satisfy the requirements of subsections (a) (other than subsection

(a)(8)) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of

section 1129(c) of the Bankruptcy Code have been satisfied.

X.    Section 1129(d).  No party in interest, including, but not limited to, any

governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that the

Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the

avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, and the

principal purpose of the Plan is not such avoidance.

Y.      All documents necessary to implement the Plan, including the Plan

Documents and all other relevant and necessary documents, have been negotiated in good faith

and at arm's length and shall, upon completion of documentation and execution, be valid,

binding, and enforceable agreements and not in conflict with any federal or state law.

Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Z.      The Debtors, as proponents of the Plan, have met their burden of proving

the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the

evidence, which is the applicable evidentiary standard.

### DISCHARGE, INDEMNIFICATION, INJUNCTIONS, RELEASES AND EXCULPATION

AA.     The discharge, indemnification, injunctions, releases and exculpation

provisions set forth in Article XII of the Plan, subject to Section 5.10 of the Plan, constitute

good-faith compromises and settlements of the matters covered thereby.  Such compromises and

settlements are made in exchange for good and valuable consideration and:  (i) are in the best

interests of the Debtors, their Estates, and holders of Claims and Interests; (ii) are fair, equitable

and reasonable; (iii) are integral elements of the restructuring and resolution of the Chapter 11

Cases in accordance with the Plan; (iv) confer substantial benefits to the Debtors' Estates; and

(v) failure to implement the injunctions, exculpation, and releases would seriously impair the

Debtors' ability to confirm and implement the Plan.  Each of the discharge, release,

indemnification, injunction and exculpation provisions set forth in the Plan:

> i.      is within the jurisdiction and judicial power of the Court under 28 U.S.C. §§ 1334(a), (b) and (d);

ii.      is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

iii.     is an integral and non-severable element of the settlements and transactions incorporated into the Plan;

iv.     confers a material benefit on, and is in the best interests of, the Debtors and their Estates;

v.      is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and

vi.     is consistent with and permitted by sections 105, 1123, 1125(e) and 1129 of the Bankruptcy Code and other applicable law.

Accordingly, it is hereby

ORDERED that:

1.      The Plan is CONFIRMED, and each of its provisions (whether or not specifically described herein) is approved, pursuant to section 1129 of the Bankruptcy Code.  All Plan Documents, including, but not limited to, the Plan Supplement, are approved in all respects.

2.      The terms of the Plan are incorporated by reference into (except to the extent modified by this Order), and are an integral part of, this Order.

3.      The Effective Date of the Plan shall occur on the first Business Day on which all conditions set forth in Section 11.1 of the Plan have been satisfied or waived in accordance with Section 11.2 of the Plan.

4.      Any Objections or responses to confirmation of the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order, including as set forth on <u>Exhibit C</u> annexed hereto, or (b) are not cured by the relief granted herein, are hereby OVERRULED in their entirety and on their merits, and all withdrawn Objections or responses are hereby deemed withdrawn with prejudice.

5.      Except as otherwise provided in the Plan, nothing contained in this Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Debtors or their Estates.  Notwithstanding anything herein or in the Plan or any order entered in these Chapter 11 Cases, the Debtors or the Reorganized Debtors forever waive, relinquish, and release any and all Causes of Action, the Debtors and their Estates had, have, or may have that arise under Chapter 5 of the Bankruptcy Code (and analogous non-bankruptcy law) against any holder of an Allowed Claim in Class 6A under the Plan, provided, however, that for the avoidance of doubt, nothing in this Section or the Plan shall release any claims or Causes of Action against former directors, officers or employees

who were not directors, officers or employees of any of the Debtors or any of the Debtors' non-Debtor subsidiaries at any time after the Petition Date.

6.      The Plan provides for the comprehensive settlement of Claims and controversies against the Debtors. The negotiations of such settlements were conducted in good faith and at arm's length, and each such settlement is of benefit to the Debtors' Estates and represents a fair, necessary and reasonable compromise of the Claims held by the holders thereof. The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan. The settlements, as reflected in the relative distributions and recoveries of holders of Claims and Interests under the Plan, are fair and reasonable to the Debtors and their Estates and accordingly are approved pursuant in all respects to Bankruptcy Rule 9019(a) and constitute good faith compromises and settlements. The settlements will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the outcome of which would likely consume substantial resources of the Debtors' Estates and require substantial time to adjudicate.

7.      The Plan's classification scheme is approved. The classifications set forth on the ballots (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any holder as representing the actual classification of such Claim under the Plan for distribution purposes, and (d) shall not be binding on the Debtors or Reorganized Debtors except for Plan voting purposes.

8.      The resolutions of certain of the Objections, and other informal comments reported by the Debtors as set forth on <u>Exhibit C</u> annexed hereto, are incorporated by reference herein and approved.

**A.    Plan Implementation**

9.      This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of the Debtors to undertake any and all acts and actions required to implement, or contemplated by, the Plan, including without limitation, the specific acts or actions or documents or instruments identified in Article VII of the Plan and pursuant to the Implementation Memorandum, and no board, member or shareholder vote shall be required with respect thereto.

10.     In accordance with section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar law of any other state (collectively, the "**<u>Reorganization Effectuation Statutes</u>**"), but subject to the fulfillment or waiver of all conditions precedent in section 11.1 of the Plan, without further action by the Court or the stockholders, managers or directors of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors are authorized to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby, including, without limitation, those transactions identified in Article VII of the Plan and pursuant to the Implementation Memorandum and the payment of any taxes owing in respect of distributions under the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including the Plan Documents.  However, all organizational documents

for the Plan Investor (or such other entity) issuing New Common Stock shall be subject to the reasonable consent of the Committee.

11.    To the extent that, under applicable non-bankruptcy law, any of the actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor(s) or Reorganized Debtor(s).  The provisions of this Order and the Plan shall be, and hereby are, valid, binding, and enforceable, notwithstanding any other applicable non-bankruptcy law.

12.    Each and every federal, state, and local government agency is hereby authorized and directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements, mortgages, deeds of trusts, indemnity deeds of trusts and any other security documents) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order, without payment of any stamp, real estate transfer, mortgage recording, or other similar tax imposed by state or local law.

13.    The consummation of the Plan shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

**B.    Plan Funding Agreement**

14.    The Plan Funding Agreement is approved.  This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, for the

Debtors and Reorganized Debtors to undertake any and all acts and actions required to

implement, or contemplated by, the Plan, including the implementation of the Plan Funding

Agreement.

**C.    Approval of Injunction, Release and Exculpation Provisions**

15.    The injunction, release and exculpation provisions contained in the Plan,

including those set forth in Article XII of the Plan, subject to Section 5.10 of the Plan, as

modified by this Order, are expressly incorporated into this Order as if set forth in full herein,

and are authorized and approved and shall be immediately effective on the Effective Date of the

Plan without further order or action on the part of the Court or any other party.  Upon entry of

this Order, all holders of Claims or Interests and other parties in interest, along with their

respective present or former employees, agents, officers, directors, principals, and affiliates, shall

be enjoined from taking any actions to interfere with the implementation or consummation of the

Plan.  Pursuant to Section 12.8 of the Plan, upon the Effective Date of the Plan, the

commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any

claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or

liabilities released pursuant to the Plan shall be enjoined.  Notwithstanding anything to the

contrary in this Order or the Plan, (a) Novelion's shareholders (solely in their capacities as such)

shall not be deemed to have granted the releases set forth in Section 12.6(b); and (b) Novelion

shall not be deemed to have granted the releases set forth in Section 12.6(b) to Novelion's

shareholders (solely in their capacities as such).

**D.    Approval of Certain Corporate Actions**

16.    The Debtors are authorized to take, prior to and following the Effective

Date, such actions necessary or desirable to modify the corporate structure of the Debtors,

including, without limitation, the adoption of the Amended Certificates of Formation, of each

applicable Reorganized Debtor, and any instruments required to be issued under the Plan, to

undertake, consummate and execute and deliver any documents relating to the restructuring

transactions contemplated by the Plan.

### E.    Order Binding on All Parties

17.    In accordance with section 1141(a) and other applicable provisions of the

Bankruptcy Code and Section 12.1 of the Plan, and notwithstanding any otherwise applicable

law, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be

binding upon, and inure to the benefit of the Debtors, all holders of Claims and Interests, any

other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor

parties to executory contracts and unexpired leases with any of the Debtors, any other party in

interest in these Chapter 11 Cases, and their respective successors and assigns, in each such case

subject to Section 5.10 of the Plan.

18.    On the Effective Date, all settlements, compromises, releases, waivers,

discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on

any and all Persons who may purport to have standing to assert any settled, compromised,

released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date,

subject to Section 5.10 of the Plan.

### F.    Vesting and Transfer of Assets

19.    On the Effective Date, except as otherwise provided in the Plan, all

property of the Estates of the Debtors, including all claims, rights and Causes of Action, and any

property acquired by the Debtors under or in connection with the Plan, shall vest in each

respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances

and Interests.

G.    **Approval of Discharge of Claims Against and Termination of Interests**

20.    The discharge provisions as set forth in Section 12.2 of the Plan are approved in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of the Court or any other party.

21.    Except as otherwise provided in the Plan, the DIP Order or this Order, in accordance with, and to the extent provided in, section 1141(d)(1) of the Bankruptcy Code, entry of this Order acts as a discharge, effective as of the Effective Date, of all debts of Claims against, Liens on, and Interests in the Debtors, their assets or properties, which debts, Claims, Liens, and Interests arose at any time before the entry of this Order.  The discharge of the Debtors shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is or becomes an Allowed Claim or whether the holder thereof voted to accept the Plan. On the Effective Date, as to every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting against the Debtors or the Reorganized Debtors, the assets or properties of any of them, any other or further Claim or Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

H.    **Exemption from Securities Laws**

22.    The issuance of and the distribution under the Plan of the Plan Securities shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code, to the maximum extent permitted thereunder.

23.    The New Common Stock (including the Rights Offering Stock and New Common Stock issuable upon the exercise of New Warrants) issued under the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance

upon section 1145 of the Bankruptcy Code.  New Common Stock (including the Rights Offering

Stock and New Common Stock issuable upon the exercise of New Warrants) issued under the

Plan in reliance upon section 1145 of the Bankruptcy Code shall be treated as having been issued

in a public offering for purposes of resales and subsequent transfers by such holders except with

respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the

Bankruptcy Code.  For the avoidance of doubt, and based on the declaration of Ben Harshbarger

in Support of Confirmation of the Debtors' First Amended Joint Chapter 11 Plan [Docket No.

276] and the statement made by Mr. Harshbarger on the record at the hearing on Confirmation of

the Plan, as of the date of this Order Novelion is not an "underwriter" as defined in subsection

(b) of section 1145 of the Bankruptcy Code, provided, however, that any subsequent transfer of

the New Common Stock by any recipient thereof (including Novelion) be done in accordance

with federal securities laws, including applicable Commission and staff guidance, applicable to

transfers of securities issued pursuant to the Plan.  The New Common Stock (including the

Rights Offering Stock and New Common Stock issuable upon the exercise of New Warrants)

issued pursuant to section 1145 of the Bankruptcy Code also does not constitute "restricted

securities" as defined in Rule 144(a)(3) under the Securities Act, and, subject to the terms of the

New Registration Rights Agreement and the Amended Memorandum of Association, shall be

treated as having been issued in a public offering for purposes of resales and transfers by any

person to whom such securities are issued by the Debtors under the Plan that is not an

"underwriter" under Section 1145(b) of the Bankruptcy Code.  For the avoidance of doubt, while

the Rights Offering shall be conducted in reliance upon the exemption from registration under

the Securities Act provided in section 1145 of the Bankruptcy Code, the Debtors are not seeking

such an exemption for the New Common Stock issued pursuant to the Plan Investor Equity Raise

or with respect to any shares purchased by existing shareholders of the Plan Investor that are not

Eligible Holders.

**I.    Executory Contracts and Unexpired Leases**

24.    Subject to Section 10.4 of the Plan, this Order shall constitute an order of

the Court approving the assumption, assumption and assignment, or rejection, as applicable, of

executory contracts and unexpired leases, the assumption, assumption and assignment, or

rejection of which is provided for in Section 10.1 of the Plan, pursuant to sections 365 and 1123

of the Bankruptcy Code, and such assumption, assumption and assignment, or rejection shall be

deemed effective as of the Effective Date.

25.    Subject to the occurrence of the Effective Date, the Debtors are authorized

to assume, assume and assign and/or reject executory contracts or unexpired leases in accordance

with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease

assumed pursuant to Section 10.1 of the Plan shall revest in, and be fully enforceable by the

applicable Reorganized Debtor in accordance with its terms, except as modified by the

provisions of the Plan, any order of the Court authorizing and providing for its assumption, or

applicable federal law.  Any order entered after the Confirmation Date by the Court, after notice

and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause

such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy

Code, as if such relief were granted and such order were entered prior to the Confirmation Date.

26.    As of and subject to the occurrence of the Effective Date and the payment

of any applicable Cure Amount, all executory contracts and unexpired leases shall be deemed

assumed, except that: (a) any executory contracts and unexpired leases that previously have been

assumed or rejected pursuant to a Final Order of the Court shall be treated as provided in such

Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected

Contracts and Leases, as amended, modified or supplemented, shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.

27.     Notwithstanding anything to the contrary herein or in the Plan, as of and subject to the occurrence of the Effective Date and payment of the applicable cure amount, if any, the executory contracts set forth on Exhibit A to the *Notice of Assumption of Contracts and Leases in Connection with Debtors' First Amended Joint Chapter 11 Plan* [Docket No. 266] and the notices served on the counterparties to such executory contracts, in each case as may be amended, modified or supplemented prior to the Effective Date, shall be assumed by the applicable Debtor as identified in such notices.

28.     Except as otherwise explicitly set forth in the Plan, all Claims arising from the rejection of executory contracts or unexpired leases, if evidenced by a timely filed proof of claim, will be treated as Other General Unsecured Claims.  Upon receipt of the Plan Distribution provided for in Section 5.7 of the Plan, all such Claims shall be discharged as of the Effective Date, and shall not be enforceable against the Debtors, the Estates, the Reorganized Debtors or their respective properties or interests in property.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely proof of claim related to such rejection damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is timely filed with the Court and served upon counsel for the Debtors on or before the date that is thirty (30) days

after the effective date of such rejection (which may be the Effective Date, the date on which the

Debtors reject the applicable contract as provided in Section 10.3(c) of the Plan, or pursuant to

an order of the Court).

29.     For the avoidance of doubt, all obligations of the Debtors to indemnify,

defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of former

directors, officers, or employees who were not directors, officers or employees of any of the

Debtors or any of the Debtors' non-Debtor subsidiaries at any time after the Petition Date,

against any Causes of Action, regardless of whether such obligations arise from the executory

contracts listed on the Schedule of Rejected Contracts and Leases, are classified as Other

General Unsecured Claims and shall be discharged on the Effective Date.

**J.    Shared Services Agreements**

30.     Notwithstanding anything to the contrary herein, the Shared Services

Agreements, as amended, are hereby deemed assumed by the Debtors and shall terminate in

accordance with the terms of the Shared Services Agreements on the earliest of (a) the date on

which both of the following have occurred: (i) the Effective Date has occurred, and (ii) Aegerion

has made all payments to Novelion as set forth in Section 1 the Shared Services Amendment, (b)

December 16, 2019, and (c) such other date agreed among the parties in writing.  For the

avoidance of doubt, subject to Aegerion's prior payment of all amounts set forth in Section 1 of

the Shared Services Amendment, upon the termination of the Shared Services Agreements,

Novelion shall be deemed to have waived any other amounts owing by the Debtors under the

Shared Services Agreements.

**K.    Government Settlement Agreements**

31.     The Government Settlement Agreements shall be deemed assumed by the

Debtors, and binding upon the Reorganized Debtors and the applicable parties thereto as of and

following the Effective Date (however, the foregoing shall not constitute a determination

whether such agreements are executory contracts subject to section 365 of the Bankruptcy Code).

32.    Notwithstanding the foregoing, the applicable federal government parties

to the federal Government Settlement Agreements have agreed not to exercise rights under the

federal Government Settlement Agreements to accelerate or increase monetary obligations under

those agreements based solely on the fact of the commencement of the Chapter 11 Cases or the

fact of the consummation of the transactions contemplated by this Plan, the Plan Funding

Agreement and/or the other Transaction Documents, including the occurrence of any

Fundamental Transaction (as defined in the Government Settlement Agreements), by virtue of

the consummation of any such transactions or the failure of the New Common Stock of the Plan

Investor to be listed on the NASDAQ or other US stock exchange, provided that all of the

Debtors' and the Reorganized Debtors' payment and other obligations under the federal

Government Settlement Agreements continue to be fulfilled in accordance with the terms of

those agreements during the Chapter 11 Cases and after the Reorganized Debtors' emergence

from the Chapter 11 Cases.  Except as expressly set forth in this paragraph, the applicable federal

government parties to the federal Government Settlement Agreements reserve all rights under

those agreements, including but not limited to any right to require accelerated or increased

payments if the Debtors and/or Reorganized Debtors fail to comply with their payment or other

obligations under those agreements.

33.    With respect to the non-federal government parties to the Government

Settlement Agreements listed at Schedule 1.81(b)-(cc), (jj) to the Plan (the "**State Government**

**Settlement Agreements**"), the Debtors and Reorganized Debtors expressly agree that any

provisions regarding default and acceleration in the State Government Settlement Agreements

(including, but not limited to, the "Relators' Letter Agreement") as written and agreed to on or about February 14, 2018, as the result of a global settlement in *United States et al., ex rel. Clarke et al., v. Aegerion Pharmaceuticals, Inc., et al.*, Civil Action No. 13-11785, as filed in the United States District Court for the District of Massachusetts, shall continue to apply as set forth in those agreements, notwithstanding any provisions of the Plan, Plan Documents, and Confirmation Order.  Nothing in the Plan, Plan Documents, and Confirmation Order releases, nullifies, precludes, modifies, or enjoins the enforcement of the terms of the State Governmental Settlement Agreements by and between the Debtors and any parties thereto.  For the sake of clarity, nothing in the Plan, Plan Documents, and Confirmation Order shall divest any court, commission, or tribunal of jurisdiction over any matters related to the State Government Settlement Agreements or confer on the Bankruptcy Court jurisdiction over any matter related to the State Government Settlement Agreements.  Notwithstanding the foregoing, the monetary obligations under the State Government Settlement Agreements shall not be accelerated or increased as a result of the commencement of the Chapter 11 Cases or the consummation of the Plan, the Plan Funding Agreement, the Rights Offering, the New Term Loan Facility, and the New Convertible Notes, including the occurrence of any Fundamental Transaction (as defined in the State Government Settlement Agreements), by virtue of the consummation of any such transactions or the failure of the New Common Stock of the Plan Investor to be listed on the NASDAQ or other US stock exchange; provided that such transactions are consummated by October 31, 2019, as such date may be extended with the consent of the Debtors, the Required Parties and the applicable government parties to the State Government Settlement Agreements; provided further that, following the effective date of the Plan, all terms of the State Government Settlement Agreements will be in full force and effect, including, but not limited to any right to

require accelerated or increased payments upon the occurrence of any Fundamental Transaction occurring after the Effective Date.

34.     Nothing herein, including but not limited to paragraphs 24-29 and 31-33, affects or limits the provisions of Section 12.6(d)-(e) of the Plan.

35.     The deadline for any Governmental Unit (as defined in Section 101(27)) to commence a judicial proceeding to determine the dischargeability of their claims, to the extent and without determining that any such deadline applies, shall be extended to October 24, 2019.

**L.     Fee Claims**

36.     Applications for final allowance of Fee Claims must be filed with the Court by the date that is forty-five (45) calendar days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter) or such later date as is determined by the Court.  Pursuant to Section 3.3 of the Plan, objections to Fee Claims must be filed with the Court and served on the Reorganized Debtors and the affected Professional Person no later than sixty-five (65) calendar days after the Effective Date.  Notwithstanding anything in the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated June 27, 2019 [Docket No. 143], all Professional Persons are authorized to file a first and final fee application with this Court no later than forty-five (45) days after the Effective Date.

37.     On the Effective Date, the Debtors or the Reorganized Debtors shall pay in Cash all unpaid Convertible Notes Trustee Fees from Plan Cash regardless of whether such fees and expenses were incurred before or after the Petition Date, without application by any party and without the need for any further order of the Court.  Payment of the Ad Hoc Group Fee Claim shall be paid only upon approval of an application seeking payment as a substantial contribution under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.  For the

avoidance of doubt, any amounts due under the DIP Order shall be paid in accordance with the terms of the DIP Order.

38.    The Debtors shall, pursuant to Section 3.4 of the Plan, pay all outstanding U.S. Trustee Fees of a Debtor, together with interest pursuant to 31 U.S.C. § 3717, if any, on an ongoing basis on the later of (a) the Effective Date and (b) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Chapter 11 Case, the applicable Chapter 11 Case is converted or dismissed, or the Court orders otherwise.

## M.    Administrative Expense Claims

39.    Except as otherwise provided in the DIP Order, the Plan Funding Agreement or Section 3.2(a) of the Plan, requests for payment of Administrative Expense Claims must be filed with the Court and served on the Reorganized Debtors, the Claims Agent and the U.S. Trustee within thirty (30) days after the Effective Date.  Such proof of Administrative Expense Claim must include at a minimum:  (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and, if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.

## N.    Stay of Confirmation Order Waived

40.    This Order (a) is a final order and the period in which an appeal must be filed shall commence upon the entry hereof, (b) shall be immediately effective and enforceable

upon the entry hereof, and (c) for good cause shown, based on the record of the Confirmation

Hearing, shall not be subject to any stay otherwise applicable under the Bankruptcy Rules,

including Bankruptcy Rules 3020(e) and 6004(h).

**O.    Binding Effect of Prior Orders**

41.    Pursuant to section 1141 of the Bankruptcy Code, effective as of and

subject to the occurrence of the Effective Date, and subject to the terms of the Plan and this

Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed

by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the

Debtors pending before the Court as of the Effective Date that ultimately are granted shall be

binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their

respective successors and assigns.

**P.    Notice of Confirmation of the Plan**

42.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or

the Reorganized Debtors, as the case may be, are directed to serve a notice of the entry of this

Order, substantially in the form of Exhibit B attached hereto and incorporated by reference (the

"**Effective Date Notice**"), on all parties that actually received notice of the Confirmation

Hearing, no later than ten (10) days after the Effective Date; provided, however, that the Debtors

or the Reorganized Debtors shall be obligated to serve the Effective Date Notice only on the

record holders of Claims or Interests as of the Distribution Record Date.  As soon as reasonably

practicable after the entry of this Order, the Debtors shall make copies of this Order and the

Effective Date Notice available on their reorganization website at

https://cases.primeclerk.com/aegerion.  The notice described herein is adequate and appropriate

under the circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

### Q.    Miscellaneous Provisions

43.    After the entry of this Order, subject to Section 14.5 of the Plan, so long as such action does not adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may, without further order or approval of the Court, make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Any waiver under Section 11.2 of the Plan shall not be considered to be a modification of the Plan.

44.    The Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committee (including each officer, director, employee, agent, consultant or representative thereof) and each Professional Person retained by the Committee shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their membership on the Committee, the Plan or the Chapter 11 Cases; provided that the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 3.3 of the Plan.

45.    On the Effective Date, the engagement of each Professional Person retained by the Debtors shall be terminated without further order of the Court or act of the parties unless otherwise agreed by the Debtors and such Professional Person; provided, however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims, and (b) nothing herein or in the Plan shall prevent the Reorganized Debtors from retaining any such

Professional Person on or after the Effective Date, which retention shall not require Court approval.

46.    Any document related to the Plan that refers to a plan of reorganization of the Debtors other than the Plan confirmed by this Order shall be, and it is, deemed to be modified such that the reference to a plan of reorganization of the Debtors in such document shall mean the Plan confirmed by this Order, as appropriate.

47.    The provisions of this Order, including the findings of fact and conclusions of law set forth herein, and the provisions of the Plan are integrated with each other, nonseverable, and mutually dependent unless expressly stated by further order of the Court.  The provisions of the Plan, the Plan Supplement, and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Order that cannot be reconciled, then, solely to the extent of such conflict, (a) the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence; and (b) as to all other agreements, instruments, or documents, the provisions of the Plan shall govern and take precedence (unless otherwise expressly provided for in such agreement, instrument, or document).

48.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties:  (i) the Debtors and their counsel; (ii) the U.S. Trustee; (iii) counsel to the Plan Investor; (iv) counsel to the Ad Hoc Group; (v) counsel to Novelion; and (vi) any party known to be directly affected by the relief sought.

49.     Failure to specifically include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

50.     As of the Effective Date, pursuant to the Plan, the Reorganized Debtors may operate their business and use, acquire, and settle and compromise claims or interests without supervision of the Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order.

51.     For purposes of calculating and making Plan Distributions, the Debtors shall be entitled to estimate, with the consent of the Required Parties and the Committee, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtors also shall be entitled to seek one or more Estimation Orders from the Court for such purposes, regardless of whether the Debtors have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any Claim for purposes of determining the Allowed amount of such Claim at any time.  Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.  Unless otherwise expressly set forth herein, the Debtors shall not be obligated to physically segregate and maintain separate accounts for reserves.  Accordingly, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.

52.     On each Distribution Date, the Disbursing Agent will make distributions or payments from the applicable Disputed Claims reserve on account of any Disputed Claim that

has become an Allowed Claim since the occurrence of the previous Distribution Date.  The

Disbursing Agent shall distribute in respect of such newly Allowed Claims the applicable Plan

Distribution to which holders of such Claims would have been entitled under the Plan if such

newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective

Date, less direct and actual expenses, fees, or other direct costs.

53.    Unless otherwise provided in the Plan or in this Order, all injunctions or

stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or

any order of this Court and extant on the date of entry of this Order shall remain in full force and

effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall

remain in full force and effect in accordance with their terms.

54.    Except as otherwise provided in the Plan, or in any contract, instrument,

release, or other agreement entered into in connection with the Plan or by order of the Court, in

accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain

and may enforce any claims, rights and Causes of Action that the Debtors or the Estates may

hold.

55.    Subject to certain restrictions and requirements set forth in section 1127 of

the Bankruptcy Code and Bankruptcy Rule 3019 (and those restrictions on modifications set

forth in the Plan) and any consent rights as set forth in the Plan, the Debtors may alter, amend, or

modify the Plan with respect to each Debtor one or more times after entry of this Order, and to

the extent necessary, may institute proceedings in the Bankruptcy Court to so alter, amend, or

modify the Plan after entry of this Order, or remedy any defect or omission or reconcile any

inconsistencies in the Plan, the Disclosure Statement, or this Order, in such matters as may be

necessary to carry out the purposes and effects of the Plan and this Order.

56.     If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan, the assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void in all respects.  In such event, nothing contained in the Plan or this Order, and no acts taken in preparation for consummation of the Plan, shall be deemed to: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity; (b) prejudice in any manner the rights and defenses of the Debtors, the holder of a Claim or Interest, or any entity in any further proceedings involving the Debtors; (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other entity; or (d) be construed as a finding of fact or conclusion of law with respect thereto.

57.     Notwithstanding the entry of this Order, this Court may properly, and from and after the Effective Date shall, to the fullest extent as is legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases, and all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan (a) as provided for in Article XIII of the Plan, (b) as provided for in this Order, and (c) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

**IT IS SO ORDERED.**

Dated:  September 10, 2019
            New York, New York

_____/s/ Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge

## <u>EXHIBIT A</u>

**Plan**

**Refer to Docket No. 279**

# **EXHIBIT B**

## **Effective Date Notice**

# **EXHIBIT C**

## **Resolution of Certain Objections**

Notwithstanding anything in this Confirmation Order or in the Plan to the contrary:

(a)     Sandoz GmbH.   With respect to the assumed contracts where Sandoz GmbH is the counter-party (the "**Sandoz Contracts**"), nothing in the Plan or in this Confirmation Order shall modify the Debtors' or Reorganized Debtors' obligation, as applicable, to pay: (i) amounts owed under the Sandoz Contracts that are unbilled or not yet due as of the Effective Date, whether accruing prior to or after the Effective Date, such as for reconciliations of charges provided for under the terms of the Sandoz Contracts, as such charges become due in the ordinary course in accordance with the terms of the Sandoz Contracts; and (ii) any other obligations, including indemnification obligations (if any) that arise from claims asserted prior to the Effective Date for which the Debtors had a duty to indemnify Sandoz GmbH, or the Debtors' or Reorganized Debtors' obligation, as applicable, to pay any postpetition expenses under such Sandoz Contracts as they come due thereunder; and (iii) any post-assumption obligations under the Sandoz Contracts.

(b)     Catalent Pharma Solutions, LLC.   With respect to the assumed contracts where Catalent, Inc., Catalent Pharma Solutions, LLC, Catalent CTS (Kansas City), LLC, or any of their affiliates (collectively "**Catalent**") are the counterparties (the "**Catalent Contracts**"), nothing in the Plan or in this Confirmation Order shall modify the Debtors' or Reorganized Debtors' obligations, as applicable, to pay: (i) amounts owed under the Catalent Contracts that are unbilled or not yet due as of the Effective Date, whether accruing prior to or after the Effective Date, such as for reconciliations of charges provided for under the terms of the Catalent Contracts, as such charges become due in the ordinary course in accordance with the terms of the Catalent Contracts; and (ii) any other obligations, including indemnification obligations (if any) that arise from claims originating prior to the Effective Date for which the Debtors would have had a duty to indemnify Catalent under such Catalent Contracts, or the Debtors' or Reorganized Debtors' obligations, as applicable, to pay any postpetition expenses under such Catalent Contracts as they come due thereunder; and (iii) any post-assumption obligations under the Catalent Contracts.

(c)     The Trustees of the University of Pennsylvania.   The prepetition cure amount related to royalties and sublicense fees for all of the University of Pennsylvania ("Penn") agreements to be assumed by the Debtors pursuant to the Plan and as listed in the Notice of Assumption of Contracts and Leases in Connection with Debtors' First Amended Joint Chapter 11 Plan [Docket No. 266] (the "**Penn Assumed Agreements**") is $4,874,728.00 (the "**Penn Cure Payment**").   All other amounts which may have accrued or otherwise become due postpetition, have been or will be paid by the Debtors and/or Reorganized Debtors in the normal course in accordance with the terms of such Penn Assumed Agreements; for clarity, nothing in the Plan or this Confirmation Order will modify the Debtors' obligation to pay amounts owed under the Penn Assumed Agreements that are unbilled or not yet due as of the Effective Date (which shall be the effective date of assumption), whether or not accruing prior to the Effective Date.   If any other default or obligation exists whether arising prepetition or postpetition under the Penn Assumed Agreements, which is not otherwise specifically satisfied by the Penn Cure Payment, all rights of Penn are reserved.   Notwithstanding anything to the contrary in this Confirmation Order or the Plan, from and after the Effective Date, the Debtors and Reorganized Debtors shall remain obligated to honor and perform all obligations under the Penn Assumed

Agreements (including, without limitation, any obligations that are based on any pre-Effective Date fact, act, omission or occurrence), whether monetary or nonmonetary, in accordance with the terms of the Penn Assumed Agreements (the "**Ongoing Penn Obligations**"), and neither the Penn Cure Payment, entry of this Confirmation Order, or the effectiveness of the Plan shall be deemed to release or discharge the Debtors from the Ongoing Penn Obligations.  No further proof of claim or request for payment of administrative expense shall be required to preserve the Ongoing Penn Obligations.

(d)      Silicon Valley Bank.  Silicon Valley Bank ("**SVB**") shall have an Allowed secured claim in the amount of $219,928.00 (the "**SVB Claim**").  From and after the entry of this Confirmation Order, SVB shall be permitted, pursuant to the applicable agreements, at any time, and from time to time, to apply cash collateral held at SVB to secure the SVB Claim in permanent reduction of the SVB Claim; provided that SVB will provide the Debtors with prompt notice of any debits of cash collateral.  To the extent necessary to effectuate the foregoing, the automatic stay shall be modified pursuant to 11 U.S.C. § 362(d) to permit SVB to apply the cash collateral to the SVB Claim as set forth herein on a dollar-for-dollar basis.  Any amounts applied hereunder shall be in lieu of any treatment or distributions to which SVB may be entitled under the Plan on account of the SVB Claim reductions, and to the extent SVB receives Plan Distributions and cash collateral applications that, in the aggregate, exceed the SVB Claim, it shall turn over such excess amount to the Debtors within ten (10) business days' thereof.  The fourteen (14) day stay required under Bankruptcy Rule 4001(a)(3) is hereby waived.