**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

Aegerion Pharmaceuticals, Inc., *et al.*[1]

                         Debtors.

------------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11

Case No. 19-11632 (MG)

## CORRECTED MEMORANDUM OPINION CONFIRMING DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN

*A P P E A R A N C E S:*

Willkie Farr & Gallagher LLP
*Attorneys for Debtors*
787 Seventh Avenue
New York, NY 10019-6099
By:   Paul V. Shalhoub, Esq.
        Andrew S. Mordkoff, Esq.

McGrail & Bensinger LLP
*Counsel for Marc Beer*
888-C 8th Avenue #107
New York, NY 10019
By:   David C. McGrail, Esq.
        Ilana Volkov, Esq.

Choate Hall & Stewart LLP
*Counsel for Marc Beer*
Two International Place
Boston, Massachusetts 02110
By:   Douglas R. Gooding, Esq.
        Melissa Bayer Tearney, Esq.
        R.J. Cinquegrana, Esq.

Benjamin J. Higgins, Esq.
*Office of the United States Trustee*
201 Varick Street, Room 1006
New York, NY 10014

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are Aegerion Pharmaceuticals, Inc. (0116), and Aegerion Pharmaceuticals Holdings, Inc. (1331). The Debtors' executive headquarters are located at 245 First Street, Riverview II, 18th Floor, Cambridge, MA 02142.

Alan Maza, Esq.
Therese A. Scheuer, Esq.
*United States Securities and Exchange Commission*
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The Court held the confirmation hearing on September 5, 2019 on the *Debtors' First Amended Joint Chapter 11 Plan*. ("Plan," ECF Doc. # 180.) The Plan is largely consensual; it overwhelmingly received the required votes in number and amount of the three impaired classes that were entitled to vote. The Plan was supported by the Official Committee of Unsecured Creditors (the "Committee"). A separate confirmation order, including the Court's findings of fact and conclusions of law, will be entered addressing all of requirements for confirmation. The Court writes only to address the sole objection to confirmation regarding classification of unsecured creditors that was not resolved consensually before or during the confirmation hearing. For the reasons discussed below, the remaining objection is overruled. Because the Plan satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules and all other applicable law, the Court confirms the Plan.

## I. BACKGROUND

**A. Documents Supporting the Plan**

Debtors' counsel submitted the following documents in support of confirmation: *Memorandum of Law in Support of Confirmation and Reply to Objections to Debtors' First Amended Joint Chapter 11 Plan* ("MOL," ECF Doc. # 277)*;* declarations of: (a) John R. Castellano, Chief Restructuring Officer of the Debtors and Managing Director of AP Services, LLP (the "Castellano Declaration," ECF Doc. # 274); (b) Ashish Contractor of Moelis &

2

Company LLC (the "Contractor Declaration," ECF Doc. # 275); and (c) Ben Harshbarger, Interim Chief Executive Officer and General Counsel of Novelion Therapeutics Inc. (the "Harshbarger Declaration," ECF Doc. # 276.)  The Committee also filed the *Official Committee of Unsecured Creditors' Statement in Support of the Debtors' Chapter 11 Plan and Reply to D&O Objections*.  ("Committee Support," ECF Doc. # 282.)  The Debtors also rely upon the balloting tabulation prepared by Prime Clerk LLC ("Prime Clerk"), the Debtors' balloting agent, (the "Voting Declaration," ECF Doc. # 260), filed with the Court on August 22, 2019, and the applicable affidavits of service and publication of Prime Clerk.  (ECF Docs. ## 204, 211, 212 & 229 (service documents).)  The Castellano Declaration, Contractor Declaration, Harshbarger Declaration, and Voting Declaration were admitted in evidence at the confirmation hearing with no objections.  Beer's counsel cross-examined Castellano during the hearing.

### B. General Background

On May 20, 2019 (the "Petition Date"), each of the two Debtors filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.  These chapter 11 cases were consolidated for procedural purposes only.  On May 29, 2019, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee.  No trustee or examiner has been appointed in the Debtors' cases.  The events leading up to the Petition Date are set forth in the *Declaration of John R. Castellano in Support of Chapter 11 Petitions and First Day Pleadings* (ECF Doc. # 2), which was filed with the Court on the Petition Date.

On the Petition Date, the Debtors filed initial versions of their chapter 11 plan (ECF Doc. # 20) and related disclosure statement. (ECF Doc. # 21.)  On July 9, 2019, the Debtors filed their first amended Plan and amended Disclosure Statement.  ("Disclosure Statement," ECF Doc. #

3

121.) On July 11, 2019, the Court entered an order approving the Disclosure Statement.

("Disclosure Statement Order," ECF Doc. # 191.)

### C. The Plan

The Plan provides for:

(a) the Plan Investor to acquire 100% of the equity interests of Reorganized Aegerion in exchange for New Common Stock of the Plan Investor in the amounts set forth in the Plan and the Plan Funding Agreement;

(b) a balance sheet restructuring regarding the Debtors' current debt obligations under the Novelion Intercompany Loan Credit Agreement, the Convertible Notes Indenture, and the Bridge Loan Credit Agreement;

(c) the unimpairment of the Debtors' ongoing trade creditors and all Government Settlement Claims;

(d) conversion of the Novelion Intercompany Loan and Other General Unsecured Claims (which include the Convertible Notes Claims, Claims held by former officers, directors, or employees of the Debtors for indemnification, contribution or advancement expenses, and contract rejection damages Claims) into the new equity of the Plan Investor and New Convertible Notes, subject to dilution on account of any management incentive plan, the Rights Offering, the Plan Investor Equity Raise, conversion of the New Convertible Notes, and any contingent value rights issued to existing shareholders of the Plan Investor;

(e) refinancing of the Bridge Loan into a new secured term loan facility of reorganized Aegerion, with an extended maturity date of five years;

(f) a new equity raise of $60 million—all of which is being backstopped by the Backstop Parties—giving eligible holders the opportunity to purchase shares of New Common Stock at a 20% discount; and

(g) no recovery to the holders of Existing Securities Law Claims or Existing Interests on account of their respective Claims and Interests.

(*See* Disclosure Statement, Article II at 18 (summary chart); Plan *passim*.)

**D. Plan Classification**

The Plan designates a total of nine classes of Claims and Interests of the Debtors. (Plan, Article IV at 29–31 (titled "Classification of Claims and Interests").) Under the Plan, four classes are unimpaired and therefore deemed to have accepted the plan pursuant to section 1126(f) of the Bankruptcy Code. A summary of the classes, their impairment status, and their voting entitlement was provided in Article IV of the Plan as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (Presumed to accept) |
| Class 2 | Other Secured Claims | No | No (Presumed to accept) |
| Class 3 | Bridge Loan Claims | Yes | Yes |
| Class 4 | Novelion Intercompany Loan Claims | Yes | Yes |
| Class 5 | Government Settlement Claims | No | No (Presumed to accept) |
| Class 6A | Ongoing Trade Claims | No | No (Presumed to accept) |
| Class 6B | Other General Unsecured Claims | Yes | Yes |
| Class 7 | Existing Securities Law Claims | Yes | No (Deemed to reject) |
| Class 8 | Existing Interests | Yes | No (Deemed to reject) |

The Disclosure Statement provides a summary of the treatment of claims and interests under the plan. (Disclosure Statement § 2.2.) As relevant to the Beer objection, the Disclosure Statement provides the following summary of the Plan treatment for Classes 6A and 6B.

Class 6A's (Ongoing Trade Claims) proposed treatment is:

> Except to the extent that a holder of an Allowed Ongoing Trade Claim agrees to a different treatment, on the applicable Distribution Date each holder of an Allowed Ongoing Trade Claim shall, at the election of the Reorganized Debtors, and to the extent that such Allowed Ongoing Trade Claim was not previously paid pursuant to an order of the Bankruptcy Court: (i) be paid in full in Cash on the applicable Distribution Date, plus postpetition interest at the Applicable Interest Rate, computed daily from the Petition Date through the Effective Date, from Plan Cash, (ii) as to any

5

> Ongoing Trade Claim incurred in the ordinary course of business and on normal credit terms where payment comes due following the Effective Date, receive such treatment that leaves unaltered the legal, equitable, or contractual rights to which the holder of such Allowed Ongoing Trade Claim is entitled, or (iii) such other treatment that would render such Ongoing Trade Claim Unimpaired.

(Plan at 27–28 (within table of class descriptions).) In other words, under section 5.6 of the Plan, ongoing trade creditors are to be paid in full, in cash, with postpetition interest paid from the petition date through the distribution dates under the Plan. The default postpetition interest rate will be the Federal Judgment Rate, unless an ongoing trade creditor contests the use of the Federal Judgment Rate on the basis of a higher interest rate in its contract, in which case the Court will determine the proper intertest rate. With respect to those ongoing trade creditors with executory contracts that will be assumed, cure amounts will include payment of higher interest rates if the contracts that will be cured and assumed include provisions for payment of higher interest rates. The Debtors' counsel represented at the hearing that no objection to the Federal Judgment Rate has been raised.

During the confirmation hearing, counsel for the Debtors represented that all ongoing trade claims in class 6A are liquidated in amount, and also that the amount of postpetition interest that will be paid to the entire class of ongoing trade creditors in Class 6A (including ongoing trade creditors with executory contracts that will be cured and assumed) is estimated to be $200,000.00. Of that amount, only about $5,000 in postpetition interest will be paid to ongoing trade creditors who do not have executory contracts.

Class 6B's (Other General Unsecured Claims) proposed treatment is:

> Except to the extent that a holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed Other General Unsecured Claim shall receive, on the applicable Distribution Date and in full and final satisfaction, settlement and release of such Allowed Other General Unsecured Claim, its Pro Rata Share of: (i) New Convertible Notes in the principal amount of $125,000,000 less the portion of New

6

> Convertible Notes distributed to (x) holders of DIP Claims (to the extent the DIP Claims are not repaid in full in Cash and receive a distribution of New Convertible Notes pursuant to Section 3.1 of the Plan), and (y) the holders of Roll Up Loan Claims pursuant to Section 5.3(a)(ii) of the Plan; and (ii) the Class 6B New Common Stock Distribution (including any New Common Stock issuable upon exercise of the New Warrants).

(Plan at 28–29 (within table of class descriptions).) The proposed distribution to Class 6B would cover 80.7% of that class's current estimated amount of claims of $305,000,000. (*Id.*)

### E. Plan Solicitation and Voting Results

Following entry of the Disclosure Statement Order on July 18, 2019, the Debtors began soliciting votes on the Plan. Specifically, the Debtors transmitted: (a) written notice of (i) the Court's approval of the Disclosure Statement, (ii) the deadline for voting on the Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the Plan; (b) copies of the Plan and the Disclosure Statement on a USB flash drive; and (c) the appropriate ballot and ballot return envelope. (*See* Disclosure Statement Order ¶ 3; ECF Docs. ## 211, 225 & 229 (affidavits of service).) Voting creditors had until August 15, 2019 at 4:00 p.m. (prevailing Eastern Time) to vote on the Plan (*i.e.*, 28 days following the solicitation mailing date).

In addition, as required by the Disclosure Statement Order, the Debtors transmitted to each member of Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (Government Settlement Claims), Class 6A (Ongoing Trade Claims), Class 7 (Existing Securities Law Claims) and Class 8 (Existing Interests) a notice indicating that such person was not entitled to vote on the Plan, as applicable, on account of such person's Claims or Interests. (*See* Disclosure Statement Order ¶ 4; ECF Docs. ## 211, 225 & 229 (affidavits of service).)

Following these solicitations, the Debtors received acceptance of the Plan from all three voting classes. (*See Voting Declaration*, Ex. A at 6 (tabulation summary chart).) A summary of the voting results is: (1) Class 3 (Bridge Loan Claims) voted by 100% in amount and number of claims to accept; (2) Class 4 (Novelion Intercompany Loan Claims) voted by 100% in amount and number of claims to accept; and (3) Class 6B (Other General Unsecured Claims) voted by 98.77% in amount and 88.89% in number of claims to accept the plan. (*Id.*)

### F. Beer Objection

Counsel for Marc Beer filed the *Objection of Marc Beer to Confirmation of the Debtors' First Amended Joint Chapter 11 Plan* ("Beer Objection," ECF Doc. #247) on August 22, 2019. Several parties joined the Beer Objection. (ECF Docs. ## 248, 249, 253, 257.) By way of background, Beer served as Chief Executive Officer of Aegerion from August 2010 until July 2015. In addition to the standard by-laws entitlement to the right of indemnification protecting all of the officers and directors of Aegerion, Beer entered into a separate indemnification agreement with Aegerion effective August 19, 2010. Aegerion indemnified Beer continuously since 2013 and advanced his legal fees and expenses through December 31, 2018. (Beer Objection ¶ 3.) Beer and other former officers and directors have incurred legal fees and expenses in defending government investigations that resulted in the Class 5 Government Settlement Claims that will be paid in full under the Plan. The investigations continue, however, with respect to some or all of the former officers and directors so they are likely to continue to incur legal fees and expenses.

Beer objects to the Plan's creation of only two classes of general unsecured creditors' claims—Class 6A (Ongoing Trade Creditors) and Class 6B (Other Unsecured Claims). Beer's claim and those of other former officers and directors were included in Class 6B Other

8

Unsecured Creditors, along with all unsecured creditors other than the ongoing trade creditors. Beer does not object to the separate classification of Class 6A (Ongoing Trade Creditors). Rather, he and the other former officers and directors who joined Beer's objection contend that they should have been separately classified in a class of unsecured former employee claims rather than lumped with all Other General Unsecured Claims. In other words, rather than arguing that former directors and officers were improperly grouped with dissimilar claims, Beer argues that there should have been an additional class that separately grouped claims even more similar to his own. Beer contends that the failure to separately classify their claims fails to satisfy sections 1129(a)(1) and 1129(a)(3). (*Id.* ¶ 11.)

First, the Beer Objection charges that the Plan improperly joins together remaining unsecured claims in Class 6B, despite differences in the origin of the claims, legal entitlement to recoveries against the Debtors, and ability for claim holders to negotiate their treatment prior to the Debtors' bankruptcy filing. (*Id.* ¶ 12.) The Beer Objection argues that the Plan is an improper attempt to gerrymander acceptance of an impaired class, violating section 1122(a). (*Id.* ¶ 13.) The Beer Objection argues that Debtors failed to provide an explanation justifying the separate classification of ongoing trade claims from other general unsecured claims, and then grouping together all other general unsecured claims into a single class (Class 6B). (*Id.* ¶ 14.) Beer charges that the consequence of the classification scheme is to disenfranchise Beer, other former officers and directors, and holders of contract rejection damage claims. (*Id.* ¶ 16.)

Second, the Beer Objection argues that the Plan, by treating Beer's unsecured claim less favorably than Class 6A Ongoing Trade Claims, which will receive payment in full, in cash, plus postpetition interest, violates the unfair discrimination and fair and equitable requirements of section 1129(b)(1). That subsection, when it applies, requires that a plan "does not discriminate

9

unfairly" and is "fair and equitable." But those requirements only apply to creditors in a rejecting class. Dissenting creditors in an accepting class are only protected by section 1129(a)(7)—the best interests test—which requires that dissenting creditors receive at least as much as they would in a chapter 7 liquidation. No one argues that any creditors under the Plan will receive less than they would in a chapter 7 liquidation, a point that the liquidation analysis makes abundantly clear. If the former officers' and directors' claims were properly classified in the class of Other Unsecured Creditors, Beer and the other former officers and directors who voted against the Plan are dissenting members of the accepting Class 6B, and they gained no protection from section 1129(b)(1).

Third, the Beer Objection argues that the Plan fails to satisfy section 1129(a)(1) because it seeks to reject Beer's indemnification agreement in violation of section 1123(b)(2). Beer argues that his indemnification agreement is not an executory contract that can be rejected under Section 365. (*Id.* ¶ 19.) The Beer Objection cites decisions holding that a contract containing an indemnity provision is not executory if the indemnitee has fully performed the contract. (*Id.* ¶ 22.) The Beer Objection argues that since the only performance remaining under Beer's indemnification agreement is the Debtors' payments pursuant to that agreement, the agreement is not-executory and, therefore, cannot be rejected under section 365. Beer argues that the Debtors remain bound to their obligations in the indemnification agreement. Beer also filed a proof of claim contending that the Debtors have breached the indemnity agreement. *In re Nuverra Envtl. Sols., Inc.* (*Id.* ¶ 23.) The Court agrees with Beer that the indemnity agreement is not executory. But that conclusion does not help Beer. Beer's counsel agreed at the confirmation hearing that whether the contract was executory or not was a difference without distinction. Though the Debtors' listed the contract as rejected, the outcome, nonetheless, as Debtors' counsel

10

acknowledged at the hearing, is that the Debtors breached the contract and, to the extent necessary, Beer will be entitled to pursue his damages claim pursuant to state law as part of the claims-allowance process. This may well prove to be an academic exercise, in any event, as the Court has approved a stipulation, entered by the Debtors and the former officers and directors, lifting the automatic stay to permit the D&O Insurance Carriers to reimburse the former officers' and directors' unpaid attorneys' fees (the basis for their proofs of claim) in connection with those individuals representation in ongoing governmental investigations. (ECF Doc. # 297.) Approximately $12 million in D&O insurance coverage remains available, substantially exceeding the current amount of unreimbursed legal fees and expenses.

Fourth, the Beer Objection argues that the Plan fails to satisfy section 1129(a)(3) because it was not proposed in good faith. The Beer Objection contests that the Plan proposes to reorganize the Debtors through a merger with Amyrt instead of an asset sale in part to relieve the Debtors of indemnification obligations owed to Beer if there was an asset sale. (*Id.* ¶ 26-27.) In sum, the Beer Objection finds that the Plan's proposed merger, classification scheme and alleged attempt to reject Beer's indemnification agreement all evince the Debtors' intent to "manipulate" the Code's voting and classification scheme. (*Id.* ¶ 28.)

Fifth, the Beer Objection argues that by including Beer as a "Releasing Party," even though he chose not to opt into the releases, the Plan's release provisions are impermissibly broad. (*Id.* ¶ 29.) In response to this objection, the Debtors amended the Plan provisions by removing Beer (and the other former officers) as a Releasing Party. Beer's counsel acknowledged at the hearing that this change resolved this portion of the Beer Objection.

## II.   LEGAL STANDARD

### A.  11 U.S.C. § 1129(a)(1)

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if "[t]he plan complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).  The phrase "applicable provisions" has been interpreted to include sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a chapter 11 plan.  *See Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 648-49 (2d Cir. 1988) ("*Manville I*"); *In re Century Glove, Inc.*, No. 90-400-SLR, 1993 WL 239489, at *6 (D. Del. Feb. 10, 1993); H.R. Rep. No. 95-595, at 412 (1977) as reprinted in 1978 U.S.C.C.A.N. 5963, 6368; S. Rep. No. 95-989, at 126 (1978) as reprinted in 1978 U.S.C.C.A.N. 5787, 5912.

Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if it is substantially similar to other claims or interests in the class.  *See* 11 U.S.C. § 1122(a).  "Substantially similar" generally has been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in a debtor. *See In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 714, 715-716 (Bankr. S.D.N.Y. 1992) *order aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) ("*Drexel Burnham Lambert I*"); *In re MCorp Fin., Inc.*, 137 B.R. 219, 226 (Bankr. S.D. Tex. 1992), *appeal dismissed*, 139 B.R. 820 (S.D. Tex. 1992).

"A debtor in bankruptcy has considerable discretion to classify claims and interests." *In re Wabash Valley Power Ass'n*, 72 F.3d 1305, 1321 (7th Cir. 1995); *accord Aetna Cas. & Sur. Co. v. Clerk*, *U.S. Bankr. Court* (*In re Chateaugay Corp.*), 89 F.3d 942, 949-51 (2d Cir. 1996); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993).  Section 1122(a) of the

Bankruptcy Code does "not require that similar classes be grouped together, but merely that any group be homogenous." *Drexel Burnham Lambert I*, 138 B.R. at 715; *see also In re Boston Post Rd.*, L.P., 21 F.3d 477, 483 (2d Cir. 1994) (allowing classification of claims of same rank in different classes); *In re Source Enters., Inc.*, 392 B.R. 541, 556 (S.D.N.Y. 2008) (same); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177–78 (Bankr. S.D.N.Y. 1989) (same). Thus, section 1122 of the Bankruptcy Code provides a debtor with a great degree of flexibility to create classification schemes that will facilitate its chapter 11 plan.

This case is a far cry from cases such as *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991), where the court rejected a plan that separately classified a secured creditor's large unsecured deficiency claim from a small class of unsecured trade creditors. The plan did so in order to obtain an accepting impaired class allowing confirmation of the plan by cramming down the plan on rejecting class with the unsecured deficiency claim. Indeed, the prototypical case for rejecting classification because of gerrymandering is a single asset real estate case, with a large unsecured deficiency claim that would otherwise outvote (and prevent confirmation) in a case with a small accepting class of unsecured trade creditors. Here, separate classification of ongoing trade creditors and other unsecured creditors is supported by evidence (which the Court finds persuasive) that the Debtors had good business reasons for the separate classification. *See, e.g., Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581 (6th Cir. 1986).

### B. 11 U.S.C. § 1129(b)(1)

Section 1129(b)(1) of the Code provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are

13

> met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1). Section 1129(b)(1) is applicable in cases where a debtor seeks to confirm a plan over a dissenting class of creditors—in bankruptcy jargon, a cramdown. In cases where there is a voting class of creditors that has rejected the plan, this section of the Bankruptcy Code provides extra protection for the "crammed-down" class of creditors by requiring that the plan's proponent prove that, as to the rejecting class, the plan is both fair and equitable and does not discriminate unfairly. *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.03.

### C.  11 U.S.C. § 1129(a)(7)—the "Best Interest" Test

Section 1129(a)(7), colloquially referred to as the Best Interest Test, provides that:

> With respect to each impaired class of claims or interests—
>
> (A) each holder of a claim or interest of such class—
>
>> (i) has accepted the plan; or
>>
>> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
>
> (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

11 U.S.C. § 1129(a)(7).

### III.  DISCUSSION

The Court concludes that Beer's first objection, namely that the Debtors impermissibly separately classified Class 6A Ongoing Trade Claims and Class 6B Other General Unsecured

14

Claims, is without merit. (*See* Beer Objection ¶ 14.) Caselaw is clear that "[a] debtor in bankruptcy has considerable discretion to classify claims and interests in a chapter 11 reorganization plan." *Wabash Valley Power Ass'n*, 72 F.3d 1305, 1321 (7th Cir. 1995); *accord In re Chateaugay Corp.*, 89 F.3d at 949-51.

Further, courts have confirmed plans that separately classify trade creditors and other general unsecured creditors where, as is the case here, trade creditors are vital to the debtors' ongoing, post-emergence business. *See, e.g., Hargreaves v. Nuverra Envtl. Sols., Inc.* (*In re Nuverra Envtl. Sols., Inc.*), No. 17-10949 (KJC), 2017 WL 3326453 (D. Del. Aug. 3, 2017) (confirming plan that separately classified trade creditors from holders of unsecured notes, the court rejected classification objection because trade creditors were critical to success of reorganized debtors); *Polite Enters. Corp. Pty Ltd. v. N. Am. Safety Prods., Inc.*, No. 13-cv-01089, 2014 WL 321668, at *5 (N.D. Ill. Jan. 29, 2014) (affirming bankruptcy court's confirmation of plan that separately classified ongoing trade claims). Indeed, it is common for plans to propose "better" treatment of ongoing trade creditors, paying their claims in cash, in full, while other classes of unsecured creditors receive different forms of consideration and are not paid in full. As long as the other classes of unsecured creditors vote in favor of the plan, the ongoing trade creditors may receive better treatment, and the plan can be approved. While Beer's counsel cross examined Castellano on the validity of the separation of trade creditors from other unsecured creditors in this case, the Court was unpersuaded. Castellano provided compelling reasons for classifying all ongoing trade claims in a separate class from other general unsecured creditors. The evidence establishes that the ongoing trade creditors will continue to have important relationships with the reorganized debtors; the other unsecured creditors will not. Castellano testified, and the Court credits his testimony, that the reorganized debtors' reputation

in the marketplace will be harmed if it does not provide the enhanced treatment to the Class 6A creditors. The Debtors were not required to cherry pick among the Class 6A creditors and treat some better than others. The standard for including creditors in Class 6A is not the same as the standard for approving critical vendor payments to some select prepetition creditors before confirmation of a plan. The group of ongoing trade creditors without executory contracts that will be assumed was estimated at the hearing to be approximately $650,000 out of the entire class of ongoing trade creditors totaling approximately $12 million. Good business reasons were given for not treating the small group of ongoing trade creditors that do not have executory contracts differently from the rest of Class 6A. Here, Class 6B creditors voted overwhelmingly to approve the Plan that provided better treatment for Class 6A Ongoing Trade Creditors. Where a debtor can be rehabilitated and continue as a going concern, there is greater value available for creditor recoveries. Maintaining credibility in the marketplace and continuing important ongoing trade relationships can be essential to a successful reorganization and support the business judgment for better treatment for ongoing trade creditors. The evidence at the confirmation hearing supports that conclusion here.

The Beer Objection complains that the cash payment in full to the Class 6A Trade Creditors, while Class B creditors are paid notes and stock, results in unfair discrimination and is not fair and equitable under section 1129(b)(1).[2] "Unfair discrimination" and "fair and

---

[2] The Amended Plan provides the following treatment for Ongoing Trade Claims:

**5.6. *Ongoing Trade Claims (Class 6A).***
(a) Treatment: Except to the extent that a holder of an Allowed Ongoing Trade Claim agrees to a different treatment, on the applicable Distribution Date each holder of an Allowed Ongoing Trade Claim shall, at the election of the Reorganized Debtors, and to the extent that such Allowed Ongoing Trade Claim was not previously paid pursuant to an order of the Bankruptcy Court: (i) be paid in full in Cash on the applicable Distribution Date, plus postpetition interest at the Applicable Interest Rate, computed daily from the Petition Date through the Effective Date, from Plan Cash, (ii) as to any Ongoing Trade Claim incurred in the ordinary course of business and on normal credit terms where

16

equitable" requirements of that section apply "with respect to each class of claims or interests that is impaired, *and has not accepted*, the plan." (Emphasis added.) Here, of course, the impaired class in which the former officers and directors have been placed has accepted the plan, so section 1129(b)(1) does *not* apply. Dissenting members of the accepting class (Class 6B) are protected by section 1129(a)(7)(A)(ii)—the "best interests" test—which assures that dissenting creditors in an accepting impaired class receive value, as of the effective date of the plan, "not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . ." No creditors have objected that the best interests test is not satisfied. The Court finds that all creditors will receive at least as much as they would receive in a chapter 7 liquidation.

The Beer Objection cites *In re Young Broad. Inc.*, 430 B.R. 99 (Bankr. S.D.N.Y. 2010), in support of their objection that the Plan violates section 1129(b)(1). In *Young,* Judge Gonzalez explained:

> Under 1129(b)(1), a plan unfairly discriminates when it treats similarly situated classes differently without a reasonable basis for the disparate treatment. *See Johns–Manville,* 68 B.R. at 636; *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 829–30 (Bankr.S.D.N.Y.1982). Where, however, a reasonable basis for the disparate treatment of two classes of similarly situated creditors exists, there is no unfair discrimination. *See In re WorldCom, Inc.,* No. 02–13533(AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct.31, 2003).

---

payment comes due following the Effective Date, receive such treatment that leaves unaltered the legal, equitable, or contractual rights to which the holder of such Allowed Ongoing Trade Claim is entitled, or (iii) such other treatment that would render such Ongoing Trade Claim Unimpaired.

(b) Voting: The Allowed Ongoing Trade (b) Claims are Unimpaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Ongoing Trade Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Ongoing Trade Claims.

17

*Id.* at 139–40.

The Beer Objection also cites *In re Johns-Manville Corp,* 68 B.R. 618 (Bankr. S.D.N.Y. 1986). In that opinion, Judge Lifland explained:

> The language and legislative history of the statute provides little guidance in applying the "unfair discrimination" standard of § 1129(b)(1). Generally speaking, this standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes. Weintraub and Resnick, *Bankruptcy Law Manual,* ¶ 8.23[3] at p. 8–109–110 (revised ed. 1986); Klee, "All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code," 53 Am.Bankr.L.J. 133, 142 (1979). Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes. *See, e.g. In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bankr.S.D.N.Y.1982); *compare In re Jartran, Inc.,* 44 B.R. 331 (Bankr.N.D.Ill.1984) (no unfair discrimination where separate classes receiving disparate treatment do not have comparable claims.).

*In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

While the language quoted from *Young* does not make the point clearly that the "unfair discrimination" and "fair and equitable" tests only apply for distributions to a class that has not accepted the plan, *Johns-Manville*, on the other hand, makes the point clearly: the "standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *Id.* Both *Young* and *Johns-Manville* involved the issue of the treatment of creditors in a non-accepting class. Here, the former officers and directors are part of an accepting class. The language of section 1129(b)(1) controls so those two tests cannot be imported to dissenting members of an accepting class.

18

The point is that Class 6B is *not* a dissenting class. Therefore, if the best interests test is satisfied, as the Court finds it is, dissenting members of Class 6B cannot complain about the treatment for creditors in Class 6A.[3]

The Court rejects the Beer Objection's next argument that the Debtors incorrectly classified dissimilar claims together in Class 6B (*i.e.*, combining former D&O claims with the Convertible Notes Claims) in order to "gerrymander" an impaired accepting Class to be unfounded. In this case, the Debtors' two other impaired Classes (Classes 3 and 4) unanimously voted to accept the Plan. Further, the Beer Objection suggests that the Debtors should have created a separate class comprised exclusively of claims of former directors and officers and that after such class rejected the Plan,[4] the Debtors would be unable to satisfy cramdown without providing payments in full in cash for this new class of unsecured creditors similar to the treatment provided to the Class 6A creditors. Courts have rejected "unfair discrimination" arguments in cases where trade creditors are treated better than other unsecured classes that have rejected a plan. *See In re Nuverra Envtl. Sols., Inc.*, 2017 WL 3326453 (rejecting creditor's objection to separate classification because (i) creditor was indisputably out of the money and not otherwise entitled to any distribution under the Bankruptcy Code, and (ii) separate classification and disparate treatment of trade claims fostered debtors' reorganization); *Journal*

---

[3]    Case law is unclear whether unsecured creditors must receive postpetition interest (in addition to the principal amount of their claims), and if so at what interest rate, in order to be considered "unimpaired" under the Code. *See Ultra Petroleum Corp. v. Ad Hoc Com. Of Unsecured Creditors (In re Ultra Petroleum Corp.)*, 913 F.3d 533 (5th Cir. 2019). If postpetition interest was *not* required to make a class of unsecured creditors "unimpaired," then Class 6A could arguably be receiving more than the amount necessary to make them whole. If this were the case, a class deemed to have rejected the plan, such as equity interests, could object that the plan is not fair and equitable. That said, no objections have been raised in this case on this point and any postpetition interest to be paid to the ongoing trade creditors without executory contracts will be minimal compared to the haircut that Class 6B is receiving. Thus, equity would not be better off if postpetition interest was not paid to Class 6A so there is no unfair discrimination.

[4]    Mr. Beer's hypothetical result—and baseless assertion that the Debtors are seeking to "disenfranchise" former director and officers—is undermined by the fact that most former directors and officers in Class 6B abstained from voting and, in fact, one former officer voted *in favor* of the Plan. (*See* Voting Declaration, Exhibit A.)

19

*Register*, 407 B.R. at 532 n.6 (noting that any alleged unfair discrimination under the plan was reasonable in light of substantial evidence submitted why trade creditors (whose good will was essential to postconfirmation success of debtors' business) were favored over other unsecured creditors); *In re Rexford Props. LLC*, 558 B.R. 352, 366 (Bankr. C.D. Cal. 2016) (allowing disparate treatment of certain unsecured creditors because a legitimate business justification existed, and decision was made "in a manner reasonably calculated to induce those vendors to continue supporting [debtor] following confirmation of a plan").

## IV.    CONCLUSION

For the foregoing reasons, the Court has concluded that the Plan complies with all requirements for confirmation in the Bankruptcy Code, the Bankruptcy Rules, and other applicable law.  As such, the Beer Objection is overruled, and the Plan is confirmed.  A separate Confirmation Order will be entered.

Dated:    September 10, 2019
         New York, New York

                              ___*Martin Glenn*_____
                                   MARTIN GLENN
                              United States Bankruptcy Judge